CARSTENSEN v. BALLANTYNE et al.

No. 2292.   Decided February 20, 1912 (122 Pac. 82).

1. EVIDENCE—DECLARATIONS—SELF-SERVING. Where one of the parties to an action produces in evidence a part only of a conversation or writing, his adversary may offer the remaining portions, if they qualify or explain those already introduced, though they may be self-serving.   (Page 414.)

2. EVIDENCE—DECLARATIONS—SELF-SERVING. Where, in an equitable proceeding instituted by an heir against other heirs and others to declare and enforce a trust in property of the estate, the defendants conceded that a trust had been created, there would be no necessity of qualifying or explaining their answers in other actions alleging that such a trust was created and placed in evidence by the plaintiff, by admitting excluded portions which alleged that the plaintiff had received a sum as satisfaction of his share of the property in suit; and such a paragraph was inadmissible as self-serving.   (Page 416.)

3. TRUSTS—PLEADING. In an action by an heir against other heirs to declare a trust in property of the estate, that the plaintiff had received his distributive share of the estate is a matter of affirmative defense, which must be pleaded.   (Page 416.)

4. APPEAL AND ERROR—HARMLESS ERROR. Possible error in refusing to admit excluded portions of answers made by defendants in former actions, other portions of which had been admitted on behalf of plaintiff, was harmless, where the defendants testified to the same facts as the answers alleged without proper objection.   (Page 416.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Alma B. Carstensen against T. H. Ballantyne and others.

Judgment for plaintiff.   Defendants appeal.

AFFIRMED.

*H. H. Henderson* and *J. C. Davis* for appellants.

*H. C. Edwards* and *Smith & Price* for respondent.

FRICK, C. J.

This was a proceeding in equity instituted by the respondent against the appellant, for the purpose of declaring and enforcing a trust affecting certain real estate in which he claimed an interest as an heir.   The respondent and all of the appellants, except T. H. Ballantyne and Joseph Pingree, are children and heirs at law of one Peter C. Carstensen, deceased.   Respondent's mother was the plural wife of said decedent.   The other appellants, except T. H. Ballantyne and Joseph Pingree aforesaid, are the children of said decedent and one Karen Carstensen, who was his legal wife and surviving widow.   Upon a trial of the issues, the court made specific findings upon all questions, although many of the facts stated in the complaint were admitted by the answer of appellants.   The material portions of the findings of fact are as follows:

That in the year 1887 Peter C. Carstensen died intestate at Ogden, Utah, leaving him surviving as his heirs at law Karen Carstensen, his widow, Martha Ballantyne, a married daughter, and seven minor-children, whose given names, written in the order of their ages, are, Joseph, Agnes, Charles, Alma B. (the respondent), Clara, Louisa, and Florence.   Joseph, at the time of the death of the decedent, was nineteen years of age and Florence four; the remainder being of various ages between those extremes.   That at the time of the death of the decedent he was the owner of certain real estate, which is particularly described.   That in 1888 said Karen Carstensen was duly appointed administratrix of the estate of said Peter C. Carstensen, and was also duly appointed guardian of the persons and estates of said minor

children, and that, as such guardian, she, in January, 1899, conveyed the interests of said minor children in and to a portion of the real estate owned by said decedent to her son-in-law, T. H. Ballantyne, who, it is found, "pretended to purchase said land, but the said Ballantyne did not at any time pay or give any consideration therefor, *but only accepted said deed and the title to said property for the sole purpose hereafter set forth in finding* 13 *hereof.*" That thereafter, in December, 1893, said Karen Carstensen, as guardian as aforesaid, by order of the probate court of Weber County, conveyed the homestead, which had theretofore been set apart to her and said minor children, to one Christian F. Schade, who, the court found, "did not at any time pay or give any consideration for the property so conveyed to him, and said conveyance was by the said Karen Carstensen to and received by the said Christian F. Schade in trust *for the uses and purposes hereinafter set forth in these findings.*" That neither the said Ballantyne nor the said Schade at any time since said conveyances have claimed any right or interest in said property, except that they held the naked legal title thereof, subject to the trusts herein set forth. That the conveyances of said real estate were made for the sole purpose of aiding said Karen Carstensen to handle said real estate at the lowest possible expense, and upon "the express understanding between her and the said Ballantyne and Schade that they and each of them would, immediately upon demand by her, convey the title to said properties to her, and the acceptance of said deeds and the title to said property by the said parties were taken for the purpose of aiding her in accomplishing her desires, as herein set forth." That thereafter, in May, 1895, the said Ballantyne and said Schade, at the request of said Karen Carstensen, conveyed said property to the appellant Joseph Carstensen, who did not at any time give or pay any consideration therefor, "but said conveyance was made to and accepted by him with the express understanding that the defendants Charles Carstensen, Clara Carstensen Pingree, Louisa Carstensen Browning, Florence Carstensen, Agnes Carstensen Jenkins, and this plaintiff were

the owners of the equitable title to said estate in equal shares, and that said deed conveyed to him, the said Joseph Carstensen, the naked legal title to said properties in trust for the use and benefit of said owners thereof, to be held by him subject to the share of said respective owners." That said Joseph Carstensen did not at any time, nor does he at this time, own or hold any interest in said properties, except as stated in these findings. That, notwithstanding the conveyances aforesaid, Karen Carstensen, together with her children, Joseph, Agnes, Charles, Clara, Louisa, and Florence, continued to occupy and use the properties aforesaid. That in March, 1904, the said Karen Carstensen died intestate, leaving surviving her as her only heirs at law the appellants Joseph Carstensen, Charles Carstensen, Clara Pingree, Louisa Browning, Florence Carstensen, Martha Ballantyne, and Agnes Jenkins. That thereafter, on the 6th day of September, 1904, Charles Carstensen was duly appointed administrator of the estate of said Karen Carstensen. That at the time of her death she owned a one-third interest in the properties conveyed, as aforesaid, and also in some other property which is specifically described.

Finding 13 is as follows:

"That on or about the 8th day of June, 1904, the said Joseph Carstensen, at the request of some of the defendants, but not at the request of this plaintiff, nor with his knowledge, by deed of conveyance duly acknowledged and recorded in Book 46 of the Records of Deeds of Weber County, Utah, conveyed and warranted to the defendant Charles M. Carstensen said homestead property and 3.62 acres of meadow land described in paragraph 2 of these findings, with full knowledge of the fact, and that the said defendants, and each of them, are and the said Joseph Carstensen was holding the legal title in and to said premises to the use and benefit of the heirs of Peter C. Carstensen, deceased, including this plaintiff, and that this plaintiff was the owner of the equitable title to an undivided one-fourteenth interest therein, and entitled to a deed therefor from the said Joseph Carstensen at any time, upon demand for the same; *that*

plaintiff has not conveyed or transferred any of his right, title, or interest in and to said property, or of the title thereto, except that on or about the 9th day of September, 1905, this plaintiff executed his deed of conveyance to Charles M. Carstensen for all of this plaintiff's interest in said property, for the sole purpose and with the express understanding between him and the said Charles M. Carstensen that the same was being made merely to have the legal title placed in said Charles M. Carstensen to enable him to more readily administer the affairs and estate of Karen Carstensen, deceased, and that said title was to be held by him in trust to the use and benefit of this plaintiff, and not otherwise; that said conveyance so made by this plaintiff to the said Charles M. Carstensen, as aforesaid, was made by this plaintiff by reason of the representation made to him by said Charles M. Carstensen that he and the other heirs of Peter C. Carstensen deceased, had sought legal advice relative to the administration of the estate of Karen Carstensen, deceased, and had been advisd that, because of certain defects existing in the administration of the estate of their deceased father and their own estate, while under the management and control of their said mother, as herein set forth, it would be well for all of said heirs, including this plaintiff, to quitclaim all of their respective right, title, and interest therein to the defendant Charles M. Carstensen, in order that the whole thereof might be distributed to him, and subsequently by him partitioned among said heirs, including this plaintiff, according to their respective interests."

Finding 14 is in the following words:

"That on the 10th day of October, 1905, a decree of distribution was made and entered in the district court of Weber County, Utah, distributing to said Charles M. Carstensen all of said real estate."

Finding 15, so far as material, is as follows:

"That before the bringing of this action the said Charles M. Carstensen undertook to and did execute deeds of conveyance, and partitioned to each of the said Clara Carstensen Pingree, Florence Carstensen, Louisa Carstensen Brown-

ing, Agnes Carstensen Jenkins, and Martha C. Ballantyne all of the real estate hereinbefore described. . . . *That said conveyances were made without the knowledge or consent of this plaintiff, and this plaintiff acquired no knowledge of said transfers until a certain suit was filed by one Piles against the defendants herein named and the plaintiff, and that said deeds were not made in pursuance of a so-called will made by Karen Carstensen before her death, and that said will was not in fact probated."*

Appellants excepted to the italicized portions of findings 13 and 15, and also to the italicized portions of the findings we have heretofore given. There are no other or further exceptions to any of the findings of fact. The findings of fact follow very closely the allegations of respondent's complaint. The exceptions of appellants to the findings cover the only issues that were raised by their answer.

Upon the foregoing findings, the court in substance found, as a conclusion of law, that respondent was entitled to an undivided one-fourteenth interest in the real estate which had been conveyed to T. H. Ballantyne and to Christian F. Schade, and by them conveyed to Joseph Carstensen, and by him in turn conveyed to C. M. Carstensen, as found in finding 13.

Pursuant to the foregoing conclusion of law, the court entered judgment, whereby the appellants to whom the real estate had been conveyed after the distribution referred to in finding 14 were required to convey to respondent said undivided interest so found to belong to him out of his father's estate.

Appellants contend that the findings of fact excepted to by them are not supported by the evidence. This contention cannot be sustained. After a careful reading of the evidence, we are convinced that the findings are not only supported by the evidence, but are further convinced that they are clearly right. It is not practical to set forth the evidence in support of the findings. If we should attempt to do so, we would have to copy the whole record, for the reason that there are some declarations and admissions coming from both

sides which produce some apparent conflicts, with respect to the different statements of the witnesses making them, which can only be understood and reconciled when the whole mass of the evidence, documentary and oral, is considered together. Moreover, when, in our judgment, as in this case, the findings of a trial court are in accordance with the evidence, a statement to that effect must ordinarily suffice.

In this case, the principal question that respondent assumed he was required to establish was that the conveyances to Ballantyne and Schade and the one from them to Joseph Carstensen, and finally the one from him to Charles M. Carstensen, and the quitclaim deed referred to in finding 13, were made in trust for the benefit of the heirs of the decedent, Peter C. Carstensen. That there was a trust was admitted, both in appellants' answer and by their counsel, at the trial of the case. What was attempted to be denied in the answer was that the trust was for the purposes alleged by respondent. That the trust relation continued on down to C. M. Carstensen is made clear by appellants' counsel, through a statement which he made in answer to a certain contention made by respondent's counsel at the trial as follows:

"Because you (referring to respondent's counsel) are all the time claiming, while all this property was turned over to C. M. Carstensen in his individual capacity, he was acting as a trustee, and we admit it, and you know it."

The fact is that counsel for respondent did not at any time claim that the property was turned over to C. M. Carstensen, except in trust; but what he claimed in that regard is immaterial now. It is material to know that appellants never disputed the fact that the property was in fact held in trust, and acting upon that theory they obtained distribution thereof to all of the heirs of Peter C. Carstensen except respondent. Appellants contended at the trial, however, and now contend, that respondent had conveyed all of his interest by a certain quitclaim deed, referred to in finding 13, and that he had received and receipted for all of the interest due him from his father's estate. This contention respondent emphatically

denied, and the court in effect found the facts in that regard in his favor.   One difficulty with appellants' contention that respondent absolutely conveyed all of his interest to C. M. Carstensen by the quitclaim deed above mentioned is that, if this was the effect of that deed as to him, it must likewise have been the effect as to all the heirs, since they all conveyed to C. M. Carstensen by the same instrument.   However, after having done so, they continued to claim, and now claim, that that conveyance was made in trust.   The conveyance or quitclaim is the one referred to in finding 13, *supra*.   It is not easy to comprehend why a conveyance, joined in by all of the heirs who were minors at the death of Peter C. Carstensen, of whom respondent was one, should be held to have been in trust for all except the respondent. Counsel for appellants, who evidently saw the weakness of this contention, now takes the position that when the latter conveyance was made respondent had no further interest in the property, because his interest had passed by the guardian's deeds to Ballantyne and Schade, to which we have referred in the findings.   But that position is not tenable, for the simple reason that, if respondent's interest passed by those deeds, the interests of all the other heirs must have passed at the same time.   Here, again, they all contend that such was neither the purpose nor effect of those deeds.   The only contention, therefore, is that respondent, before bringing this action, had in fact received his full share out of his father's estate.   As we have seen, this, under the circumstances of this case, was a question of fact, which, we think, the court correctly found against appellants' contentions.

It is in connection with this contention that the only legal question involved arises.   As we have already pointed out, no claim of this kind is contained in appellants' answer.   The question, however, arose at the trial, regardless of the issues presented by the answer, in the folowing manner:

Counsel for respondent, in attempting to prove the allegations of the complaint with regard to the alleged trust, and for the purpose of showing that the conveyances from the

guardian to Ballantyne and Schade, and that from them to Joseph Carstensen, and the one from him to C. M. Carstensen, were in fact all made in trust, offered in evidence certain answers of the appellants which had been filed in other actions, in which all of said conveyances were averred to have been made in trust for the heirs of Peter C. Carstensen, including the respondent. These answers were admitted in evidence by the court as admissions by the appellants, who made them, that the conveyances in question were made in trust. In these answers, there was, however, a paragraph in which appellants had averred that respondent, after having attained his majority, had received $1000 as his share or interest in the real properties in question in this suit. This paragraph counsel for respondent omitted from his offer in offering in evidence the answers aforesaid; but counsel for appellants offered it as being a part of the answers which were offered by respondent's counsel and admitted in evidence as declarations of appellants. Counsel for respondent objected to the paragraph offered by appellants, upon the ground that the statements contained therein were merely self-serving, and not admissible in evidence in favor of the individuals making them. The court excluded the paragraph, upon the ground that the statements were self-serving, and, further, because the parties were in court and could testify to the facts, if they were facts. Appellants' counsel now insist that the court erred in excluding the paragraph of the answer containing the statements aforesaid, upon the ground that, where one party offers in evidence a portion of a conversation or writing, the opposite party may introduce the remaining portions, so that the whole conversation or writing may be brought before the court. The general rule, no doubt, is to the effect that, where one of the parties produces in evidence a part only of a conversation or writing, his adversary may offer the remaining portions of the conversation or writing, if such portions in any way qualify or explain the portions that were offered in evidence, although the latter portions may in their facts be self-serving. The general rule upon this subject is well stated in 1 Ency. Ev.

385, under the heading of "admissions," in the following words:

"So where statements, oral or written, made against interest, are proved, other acts or declarations made at the same time, and as a part of the same conversation, or as a part of the same writing, favorable to the party making the declarations proved against him, and qualifying or explaining what has been so proved, are competent in his behalf."

In *Grattan v. Metropolitan Life Ins. Co.*, 92 N. Y. 275, 44 Am. Rep. 372, in the headnote, the rule is stated thus:

"The introduction by one party of part of a conversation or a writing in evidence renders admissible, on the other side, so much of the remainder as tends to explain or qualify what has been received; and that is to be deemed a qualification which rebuts and destroys the inference to be drawn from, or the use to be made of, the portion put in evidence."

To the same effect is *Vanneter v. Crossman*, 42 Mich. 465, 4 N. W. 216.

The question, therefore, in every case is whether the parts of the conversation or writing which are omitted from the original offer, and which are sought to be introduced in evidence by the adverse party, are such as in some way qualify, explain, affect, or destroy the effect of the portions that have been admitted in evidence. In **2, 3, 4** this case, the answers were offered and could have been offered, but for one purpose, namely, to show that all of the heirs had by their statements, regarded the conveyances in question as having been made in trust. As we have already shown, the fact that there was a trust was conceded, and the only question in dispute was whether such trust was for the purposes claimed by respondent. This is made evident from counsel's exceptions to the findings. This being so, the only question is, Did the ruling of the court in excluding the paragraph in question prejudice the rights of appellants? From the authorities referred to, it is clear that the only purpose for which the statements in said paragraph were admissible was because the effect thereof, in some way or to some extent, may have been to modify or explain the

admissions or declarations which were contained in the answers of which said paragraph was a part. If the effect was not such, then the paragraph was not admissible at all. The statements could not be used as substantive evidence, except in so far as the result would be incidentally affected by reason of the modifying effect the statements might have upon the admissions referred to. In view, however, that appellants, after the answers were admitted in evidence, conceded that the conveyances referred to in such answers were made in trust, there was nothing left to explain by the statements contained in the excluded paragraph. The statements contained in said paragraph were, therefore in the nature of a defense to respondent's claim, and as such should have been pleaded, if appellants desired to prove them. The court, however, permitted them to prove the facts without pleading them; and, if respondent had based his objection upon the ground that the facts offered in evidence did not respond to any issue presented by the pleadings, his objection would have been good. He did not object, however; and hence the court could not do otherwise than to admit the evidence by permitting the parties to testify to the facts, just as was done. By pursuing this method, appellants gained an advantage, but lost nothing. The only error the court committed in excluding the paragraph in question, therefore, was merely technical, and deprived appellants of no legal rights. Even this statement must be considered in connection with the assumption that the statements contained in said paragraph would have had the effect of modifying or explaining the admissions or statements contained in appellants' answers that were admitted in evidence. If their effect was not such, the paragraph was rightfully excluded; and if their effect was not such, then, under the circumstances of this case, appellants could not have been prejudiced, because the facts stated in the paragraph could at most only qualify or explain a fact which appellants have not disputed, namely, that the conveyances referred to in the admitted answers were made in trust. In view of this, we cannot see where the appellants could have been prejudiced by the ruling of the

40 Utah 27.

court upon this question. This is also true with respect to all the other rulings that are complained of, and for that reason they require no special consideration.

While there are some other features in this case which, in our judgment, go far toward supporting the findings and judgment, it must suffice to say that upon the whole record it is clear to our minds that the court did no more than permit the respondent to share in his father's estate upon the same terms and conditions that all of his half brothers and sisters were permitted to do so. This both law and justice required.

The judgment is affirmed, with costs to respondent.

McCARTY and STRAUP, JJ., concur.