## Rusch v. Roehr.

### June 1, 1943.

Allen Schmitt for appellant.

Allen, McElwain, Dinning & Clark, Thomas A. Ballantine, and Oldham Clarke for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellee, Margaret Roehr, instituted this proceeding in June, 1940, against the appellant, Rosa Rusch, to collect a $1,000 demand note executed by the appellant and her husband, Ben Rusch, on January 12, 1937. The proceeds of the note were used to pay accounts owing by Raymond Rusch, son of the makers of the note, which he had incurred in his plumbing business. Ben Rusch died within a few months after the note was executed. The defense interposed by the appellant was that she signed the note as surety, and, since she was a married woman at the time of its execution, she could not be held liable on it (KRS 404.010).

Mrs. Rusch assumed the burden of proof and the testimony offered in her behalf was her own and that of J. Louis Daeuble, a son-in-law of Mrs. Roehr, who makes his home with her and looks after her business. The testimony for the appellee consisted of her own and that of her daughter, Anna Daeuble.

The trial resulted in a judgment for $1,000 and interest in favor of Mrs. Roehr. Mrs. Rusch is insisting the judgment should be reversed for the following reasons: (1) A peremptory instruction should have been given in her favor; (2) the court admitted incompetent evidence; and (3) the instruction given by the court was erroneous. Having reached the conclusion that the trial judge would have been warranted in granting the appellee's motion for a peremptory instruction at the conclusion of the evidence offered for appellant, we will confine our consideration of the case to a discussion of her evidence, along with the question raised as to the competency of one phase of it.

We have noted the defense interposed by Mrs. Rusch was that she signed the note as surety. However, she made no statement in her testimony as to signing the note in any capacity. On direct examination she said she knew nothing of the transaction; had authorized no one to talk for her about the loan; received no part of it; derived no benefit from it; and her husband handled all of their business affairs. On cross examination she said she knew her son Raymond had encountered financial difficulties in his plumbing business; she and her husband had loaned him money prior to the time the note was executed; they had a bank account with a survivorship provision; they owned securities jointly; at the time of the execution of the note her husband owned no property exclusively in his own name; and she denied telling Mrs. Roehr shortly after the death of her husband that she would repay the loan. Daeuble said Ben and Raymond Rusch came to see him and Mrs. Roehr about borrowing money to help Raymond, and that Mrs. Rusch was not present during any of the negotiations for the loan. In answer to questions relating to the loan transactions, Daeuble said Rusch wanted to help his son, who was in financial difficulties; he knew the Ruschs had a joint bank account with a survivorship provision and that they owned securities jointly; he prepared the note and told Rusch that both he and his wife should sign it;

and the money was loaned to both of the parents of Raymond Rusch. On cross examination Daeuble elaborated further upon the discussions which he and Mrs. Roehr had with Ben Rusch, saying that Rusch said "We," meaning himself and Mrs. Rusch were good for the debt; and that he asked him to place the proceeds of the note in his bank account and distribute them to Raymond's creditors, which he did.

As said in Longnecker v. Bondurant, 173 Ky. 427, 191 S. W. 286, ordinarily, the presumption will be indulged that the names of all persons appearing as obligors, to a note, in the absence of some showing to the contrary, are principals, and, even though a wife's name may appear below that of a husband on a note, it will be presumed, as in the case of any other obligor, she is a principal debtor, but that presumption may be rebutted by proof of surrounding circumstances indicating the contrary. The burden was on Mrs. Rusch to show she signed the note as surety rather than as a principal. She did not say she did or did not sign the note. Her testimony went only to the extent of saying she knew nothing of the transaction and received no part of the proceeds of the note. There is some indication her position is that she was acting only as surety for her son, Raymond, and, therefore, not liable on the note. But, as pointed out in National Bank of Kentucky's Receiver v. Snead, 267 Ky. 816, 103 S. W. (2d) 269, 270, a wife may borrow money on her own credit and execute her note therefor, and she will be liable on the note, although the money was borrowed for and used by another. It was said further in that opinion:

"* * * The statute does not prevent a married woman from borrowing money and giving or lending it to another, and the fact that the lender knows she intends to turn over the proceeds of the note to a third person does not convert her into a surety and relieve her of liability unless the transaction is a subterfuge or device to evade the statute. * * *"

Mrs. Rusch offered no evidence tending to show she executed the note as surety. It is clear from Daeuble's evidence that she was a principal maker. Certainly he and Mrs. Roehr, for whom he was acting, thought she was, and he made it clear that Ben Rusch knew it was a joint obligation. There is also the significant circum-

stance that Ben Rusch owned no property independently, all of the property owned by the Ruschs being held jointly, with a survivorship provision.

The complaint as to the evidence is that Daeuble was permitted to testify as to his conversations and transactions with Ben Rusch. Daeuble was called as a witness for the appellant, and it was in response to questions put to him relative to the transactions that he told how the whole matter came about. The contention is, since Daeuble was the agent for Mrs. Roehr, he should not have been permitted to testify as to the statements made by Ben Rusch; but, it is clear from an examination of Daeuble's evidence that counsel for the appellant opened the door for this testimony. It was not until Daeuble had related practically everything that had happened that objection was made. Daeuble having been questioned by counsel for the appellant as to the transactions and conversations he had with Ben Rusch, the way was open for the appellee to cross-examine him on such matters. Eskind v. Southern Trust Co., 233 Ky. 435, 25 S. W. (2d) 1018.

Objection is made also to testimony given by Mrs. Roehr as to what Ben Rusch said, and as to statements made by Mrs. Rusch after the death of her husband in the presence of Mrs. Roehr and her daughter to the effect that she was going to pay the note. It is unnecessary to discuss these questions, however, since it has been pointed out already that we are of the opinion it would have been proper to sustain the appellee's motion for a directed verdict at the conclusion of the appellant's evidence; there being an utter failure to show she signed the note as surety rather than as a principal.

Judgment affirmed.